UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

D'ANTHONY JAMISON,

      Plaintiff,

  -v-                                                 No. 17-CV-1764-LTS-SDA

DET. NATHAN CAVADA,

      Defendant.

-------------------------------------------------------x

## MEMORANDUM ORDER

      Plaintiff D'Anthony Jamison ("Plaintiff" or "Mr. Jamison") brings this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendant Nathan Cavada ("Defendant" or "Detective Cavada"), a detective with the New York City Police Department. Plaintiff asserts that Defendant violated his federal constitutional rights by unlawfully detaining him, maliciously prosecuting him, denying him his right to a fair trial, and subjecting him to excessive force. The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

      Before the Court is Defendant's motion for summary judgment as to all of Plaintiff's claims. (Docket Entry No. 50.) The Court has considered the parties' submissions carefully. For the following reasons, Defendant's motion for summary judgment is granted in part and denied in part.

BACKGROUND

Except as otherwise noted, the following material facts are undisputed.[1] On April 1, 2014, Mr. Jamison waited for the L train at the Union Square subway station. Detective Cavada testified[2] that he observed Plaintiff pacing back and forth on the platform while allowing several trains to pass. (Def. 56.1 ¶ 3.) Plaintiff disputes this: he alleges that he waited in one place and boarded the first train to arrive at the station. (Vik Pawar Affidavit ("Pawar Aff."), Docket Entry No. 59, Ex. 1 ¶¶ 2-3.) Detective Cavada testified that Mr. Jamison eventually boarded a Brooklyn-bound L train, but held the train doors open and "peek[ed] out of the train while the doors were trying to close." (Declaration of Evan F. Jaffe in Support of Detective Cavada's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 ("Jaffe Decl."), Docket Entry No. 51, Ex. B at 24-25.) Mr. Jamison denies that he held the train doors open. (Pawar Aff., Ex. 1 ¶ 7.)

Detective Cavada followed Mr. Jamison onto the Brooklyn-bound train and, at the Bedford Avenue stop, asked Mr. Jamison to deboard so that he could issue Mr. Jamison a ticket for holding the train doors open. (Def. 56.1 ¶¶ 5-6.) Mr. Jamison alleges that he did not feel free to leave at this time, but he also acknowledges that he did, in fact, "start[] to walk away from Cavada" because he "had done nothing unlawful." (Pawar Aff., Ex. 1 ¶¶ 6, 9.) Mr. Jamison alleges that Detective Cavada then "grabbed [Plaintiff] from behind by [his] neck," and

---

[1] The facts presented or recited as undisputed are drawn from the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1, or from evidence as to which there is no nonconclusory factual proffer. Citations to Defendant's Local Civil Rule 56.1 Statement (Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1"), Docket Entry No. 52) and Plaintiff's Responsive Statement (Plaintiff's Response to Defendant's Local Rule 56.1 Statement ("Pl. Resp."), Docket Entry No. 58) incorporate by reference the parties' citations to the underlying evidentiary submissions.

[2] Use of the term "testimony" in this Memorandum Order refers to deposition testimony upon which the parties rely in connection with this motion practice.

"smashed it against the rail in the middle of the platform." (Id. ¶¶ 10, 12.) According to Mr. Jamison, "Cavada then squeezed [his] wrists and neck and tightly handcuffed [him] causing [him] excruciating pain." (Id. ¶ 13.)

Before issuing Mr. Jamison a ticket for holding the train doors open, Detective Cavada conducted a warrant check and discovered that Mr. Jamison had multiple outstanding arrest warrants. (Def. 56.1 ¶¶ 7-8.) Detective Cavada testified that, after the warrant check, he handcuffed Mr. Jamison, "placed him under arrest," and escorted him via subway train to "Transit District 4"—the police station at the Union Square station. (Id. ¶¶ 9-10.) Detective Cavada confiscated all items in Mr. Jamison's possession at the time of the arrest, which included his cellular phone, his identification, and a MetroCard. (Id. ¶ 17; Pawar Aff., Ex. 1 ¶ 15.)

Detective Cavada claims that, while Mr. Jamison deboarded the train at Union Square, Detective Cavada noticed an iPhone on the seat where Mr. Jamison had been sitting alone. (Def. 56.1 ¶¶ 11-13.) The phone displayed the following message: "This iPhone has been lost, please call my cousin at . . . ." (Id. ¶ 14.) Detective Cavada testified that he had inspected the seat before Mr. Jamison sat there and observed that "there was no phone or other objects on the seat." (Id. ¶ 12.) Detective Cavada obtained a statement from the iPhone's owner confirming that Mr. Jamison did not have permission to possess the iPhone. (Jaffe Decl., Ex. M.) Mr. Jamison "denies that an iPhone was recovered next to him." (Pl. Resp. ¶ 15.) He states that "[n]o iPhone fell off from the seat [he] was sitting in," and that he "did not have a stolen iPhone in [his] possession." (Pawar Aff., Ex. 1 ¶¶ 21, 24.)

On April 1, 2014, Detective Cavada charged Mr. Jamison with (i) interfering with transit service in violation of section 1050.6(a) of chapter 21 of the New York Codes, Rules and

Regulations, and (ii) fifth degree possession of stolen property in violation of New York Penal Law section 165.40. (Def. 56.1 ¶ 15.) Mr. Jamison alleges that he was then sent to Rikers Island, where he received medical treatment for injuries sustained during his arrest. (Pawar Aff., Ex. 1 ¶ 32.) Detective Cavada disputes Mr. Jamison's allegation concerning medical treatment and asserts that there are no medical records pertaining to this alleged treatment. (Def. 56.1 ¶ 18.) Mr. Jamison posted bail and was released from Rikers Island on April 4, 2014. (Pawar Aff., Ex. 1 ¶ 26.)

On the day that he was released from Rikers, Mr. Jamison returned to Transit District 4 to retrieve the belongings Detective Cavada had confiscated after his arrest. (Def. 56.1 ¶ 32.) Detective Cavada had sent Mr. Jamison's MetroCard to the Transit Bureau Special Investigations Unit for investigation, and had discovered that Mr. Jamison's MetroCard was purchased using a stolen credit card. (Id. ¶¶ 28-31.) When Mr. Jamison returned to Transit District 4 on April 4, 2014, Detective Cavada arrested him for possession of stolen property. (Id. ¶ 32.) During the search incident to that arrest, Detective Cavada discovered a pipe that later tested positively for cocaine. (Id. ¶ 33.) Mr. Jamison alleges that he "did not possess [a] controlled substance on March 10 or April 4, 2014." (Pawar Aff., Ex. 1 ¶ 29.) Mr. Jamison was ultimately charged with possession of a controlled substance in the seventh degree in violation of New York Penal Law section 220.03. (Def. 56.1 ¶ 35.)

On February 18, 2015, the charges arising from Mr. Jamison's April 1 and 4, 2014, arrests were dismissed pursuant to speedy trial provisions. (Id. ¶ 36.)

DISCUSSION

Rule 56 Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party bears the burden of demonstrating the absence of a material fact, and the court must be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'" Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. U.S., 996 F.2d 1455, 1461 (2d Cir. 1993)). Thus, an opposing party that is unable to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will not survive a Rule 56 motion. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party who bears the burden of proof at trial "must do more than simply show that there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation." Jeffreys v. N.Y.C., 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted).

For the purposes of summary judgment motion practice, a fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted). "[M]ere conclusory allegations or denials . . . cannot by

themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

Section 1983 Liability

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 55 (2d Cir. 2014). To establish a viable section 1983 claim, a plaintiff must show a "violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87-88 (2d Cir. 2015) (internal quotation marks omitted). Here, the parties do not dispute that Detective Cavada was "acting under color of state law" when he arrested and brought charges against Mr. Jamison.

*False Arrest Claims*

A section 1983 claim for false arrest "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). A person is considered "seized" within the meaning of the Fourth Amendment when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Michigan v. Chesternut, 486 U.S. 567, 573 (1988) (internal quotation marks omitted). In addressing a section 1983 claim for false arrest, courts look to "the law of the state in which the arrest occurred." Jaegly v. Couch, 439 F.3d 149, 151-52 (2d Cir. 2006). To establish a section 1983 claim for false arrest under New York law, the plaintiff must proffer evidence that (i) the defendant intended to confine him, (ii) the plaintiff was conscious of the confinement, (iii) the plaintiff did

not consent to the confinement, and (iv) the confinement was not otherwise privileged.  Berg v. Kelly, 897 F.3d 99, 106 (2d Cir. 2018).  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest."  Weyant, 101 F.3d at 852 (internal quotation marks omitted).  Probable cause "exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Id.

Where a law enforcement officer makes an arrest without probable cause, he or she may nonetheless be immune from liability under the doctrine of qualified immunity.  "The defense of qualified immunity shields law enforcement officers from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware."  Figueroa v. Mazza, 825 F.3d 89, 99 (2d Cir. 2016) (internal quotation marks omitted).  An officer is entitled to qualified immunity if he or she had "arguable probable cause" to arrest plaintiff; that is, "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Id. at 100.

**April 1, 2014, Arrest**

Material factual disputes preclude summary judgment with respect to Plaintiff's April 1, 2014, false arrest claim.  Defendant argues that (i) Plaintiff's active arrest warrants and (ii) the lost iPhone he allegedly found in Plaintiff's possession gave him probable cause to arrest Plaintiff on April 1, 2014.  (Memorandum of Law in Support of Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 ("Def. Br."), Docket Entry No. 53, at 8.)  However, Plaintiff alleges that he was arrested before Detective Cavada discovered either of

these facts. According to Plaintiff, he was arrested (at the latest) when Detective Cavada "grabbed [him] from behind by [his] neck" after he began to walk away. No reasonable person would feel free to leave after being forcibly "grabbed" by a police officer. The parties' respective accounts of what preceded this arrest differ materially. Detective Cavada testified that he observed Plaintiff pacing on the L train platform and holding the subway doors open as they were closing. Plaintiff, on the other hand, alleges that he was not pacing on the train platform; he alleges that he boarded the first Brooklyn-bound train that he saw and did not interfere in any way with the subway doors. Further, Plaintiff alleges that he did not have an iPhone in his possession on April 1, and that Defendant had not conducted a search of the subway seat before Plaintiff occupied it. Taking Plaintiff's declaration as true—as the Court must at this stage—the Court concludes that a reasonable jury could find that Detective Cavada lacked probable cause before he arrested Plaintiff on April 1, 2014. The same factual disputes also preclude a determination that Detective Cavada is entitled to qualified immunity as a matter of law. Therefore, Defendant's motion is denied as to Plaintiff's April 1 false arrest claim.

**April 4, 2014, Arrest**

Defendant argues that he had probable cause to arrest Plaintiff on April 4, 2014, because Plaintiff possessed (i) a MetroCard that had been purchased with a stolen credit card and (ii) a crack pipe. (Def. Br. at 10-11.) Plaintiff has failed to identify a genuine dispute as to these facts. Instead, Plaintiff offers only a conclusory declaration that he "did not possess any stolen metro-cards and [he] certainly did not possess [a] controlled substance on March 10 or April 4, 2014." (Pawar Aff., Ex. 1 ¶ 29.) Plaintiff does not dispute that the MetroCard he had in his possession on April 1 had been purchased with a stolen credit card. Further, Plaintiff's assertion that he "did not possess [a] controlled substance" does not controvert Defendant's allegations

that he recovered from Plaintiff's possession a pipe that tested positively for cocaine. For these reasons, the Court concludes that Defendant has demonstrated that there is no genuine dispute that Detective Cavada had probable cause to arrest Plaintiff on April 4, 2014. Therefore, the Court grants Defendant's motion as to Plaintiff's April 4 false arrest claim.

*Malicious Prosecution Claim*

In order to prevail on a malicious prosecution claim brought under section 1983, a plaintiff must demonstrate "(i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; (iv) that the proceeding was instituted with malice;" and (v) "a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." Mitchell v. N.Y.C., 841 F.3d 72, 79 (2d Cir. 2016) (internal quotation marks omitted). Defendant argues that he is entitled to summary judgment as to Plaintiff's malicious prosecution claim because (i) the charges brought against Plaintiff were supported by probable cause or at least "arguable probable cause," (ii) Plaintiff has not proffered any evidence that Defendant acted with malice, and (iii) the proceedings were not terminated in his favor. (Def. Br. at 16-18.)

Plaintiff has not proffered any evidence that the proceedings were terminated in his favor. "[P]roceedings are terminated in favor of the accused only when their final disposition is such as to indicate the accused is not guilty[;]" a plaintiff must demonstrate "affirmative indications of innocence to establish 'favorable termination.'" Lanning v. City of Glens Falls, 908 F.3d 19, 23, 25-26, 29 (2d Cir. 2018) (internal quotation marks omitted) (concluding that plaintiff "ha[d] not plausibly alleged that any of the criminal proceedings against him were terminated in a manner indicating his innocence," where the charges were dismissed simply "in

the interest of justice"). The dismissal of Plaintiff's charges on speedy trial grounds does not affirmatively indicate his innocence, as required under Section 1983. Thompson v. N.Y.C., No. 17 Civ. 3064 (DLC), 2019 WL 162662, at *4 (S.D.N.Y. Jan. 10, 2019). Therefore, Plaintiff cannot demonstrate that the proceedings were terminated in his favor and, as a result, has failed to make a showing sufficient to establish the existence of an element essential to his malicious prosecution claim. Thus, Defendant is entitled to summary judgment as a matter of law as to this claim.

*Denial of the Right to a Fair Trial Claim*

To prevail on a claim for deprivation of a fair trial, a plaintiff must show that (i) an investigating official (ii) fabricated evidence (iii) that was likely to influence a jury's decision, that the investigating official (iv) forwarded that information to prosecutors, and (v) the plaintiff suffered a deprivation of liberty as a result. Jovanovic v. N.Y.C., 486 F. App'x 149, 152 (2d Cir. 2012). "The manufacture of false evidence, in and of itself," without a causal connection to "the sequence of events that result[] in a deprivation of [plaintiff's] liberty," cannot support a denial of the right to a fair trial claim." Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir. 2000).

Defendant argues that Plaintiff is unable to show that he fabricated evidence and, as such, Plaintiff's fair trial claim cannot survive summary judgment. (Def. Br. at 19.) However, taking as true Plaintiff's declaration that he neither held the subway doors open nor possessed a stolen iPhone, a reasonable factfinder could conclude that Detective Cavada's account was fabricated. Therefore, there remains an issue of fact as to whether the transit violation and possession of stolen property charges brought against Plaintiff were based on

fabricated evidence. This question must be left for the finder of fact. Defendant's motion is denied as to Plaintiff's April 1 fair trial claim.

On the other hand, Plaintiff has failed to demonstrate that there is a genuine dispute as to the facts underlying his controlled substance charge. Plaintiff alleges that he "certainly did not possess [a] controlled substance on March 10 or April 4, 2014." (Pawar Aff., Ex. 1 ¶ 29.) However, Plaintiff cannot "show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory . . . ." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (citations omitted); see also Apostol v. N.Y.C., No. 11 Civ. 3851 (RRM), 2014 WL 1271201, at *6 (E.D.N.Y. Mar. 26, 2014), aff'd, 607 F. App'x 105 (2d Cir. 2015) (granting summary judgment on fair trial claim where the only evidence proffered by plaintiff to contradict evidence of marijuana found in his vehicle was plaintiff's own testimony that his car contained no marijuana). Plaintiff has failed to make any factual proffer from which a reasonable jury could conclude that the controlled substance charge was derived from fabricated evidence. Therefore, Defendant's motion is granted as to Plaintiff's April 4 fair trial claim.

*Excessive Force Claim*

Mr. Jamison claims that Detective Cavada used excessive force in smashing Mr. Jamison's neck against a railing and in handcuffing Mr. Jamison on April 1, 2014. In evaluating whether a law enforcement officer used excessive force during an arrest, the Court should consider "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). While "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," courts look to

"the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (citations omitted).

Handcuffing-related claims demand distinct considerations because "to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." Esmont v. N.Y.C., 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005). "To assess a claim for excessive force based on handcuffing, the Court should consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendant[] ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Pelayo v. Port Auth., 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012) (internal quotation marks omitted). Courts in this Circuit have sustained claims for excessive force for overly tight handcuffs where a plaintiff alleged "continuing injury" that is "beyond temporary discomfort." E.g., Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (collecting cases).

Plaintiff claims that Defendant used excessive force when effectuating his April 1, 2014, arrest because he "grabbed [his] neck and smashed it against the rail in the middle of the platform," and "tightly handcuffed [him] causing [him] excruciating pain." (Pawar Aff., Ex. 1 ¶¶ 12-13.)[3] Plaintiff alleges that he received treatment for his "physical and mental injuries"

---

[3]  In his reply, Defendant asserts that "plaintiff failed to address defendant's argument that there is no evidence in support of [the] use of force [alleged in Plaintiff's Second Amended Complaint,]" and that Plaintiff "never once mentioned, inferred, or hinted that his excessive force claim involved purported police brutality." (Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, Docket Entry No. 65, at 8-9.) However, Plaintiff did allege that he was the victim of police brutality. (Second Amended Complaint, Docket Entry No. 15, ¶ 15) ("Cavada then hit plaintiff on the head a few times and took him to the other side of the train platform to get on a train heading towards Manhattan."). Furthermore, it cannot

while detained at Rikers Island. (Pawar Aff., Ex. 1 ¶ 32.) Viewing the evidence in the light most favorable to Mr. Jamison, the Court finds that a reasonable jury could credit Mr. Jamison's testimony that Detective Cavada hit his head in the way Plaintiff described and, thus, conclude that Detective Cavada's actions were objectively unreasonable in light of the facts that (i) Mr. Jamison was not evading arrest at the time and (ii) Mr. Jamison was suspected of committing a very minor crime. Plaintiff's factual proffers are insufficient to sustain an excessive force claim for handcuffing, however, because Plaintiff has not provided any evidence that he suffered a "continuing injury" that went "beyond temporary discomfort." Therefore, the Court grants summary judgment as to the handcuffing claim, but denies summary judgment as to the excessive force claim concerning his head injury.

## Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is granted as to (i) Plaintiff's false arrest claim arising from his April 4, 2014, arrest, (ii) Plaintiff's malicious prosecution claim, (iii) Plaintiff's denial of a right to fair trial claim arising from charges brought on April 4, 2014, and (iv) Plaintiff's handcuffing excessive force claim. Defendant's motion is denied in all other respects.

---

fairly be said that Plaintiff "failed to address defendant's argument that there is no evidence in support of this alleged use of force"—Plaintiff provided a sworn declaration in which he states that Detective Cavada "grabbed [his] neck and smashed it against the rail in the middle of the platform." (Pawar Aff., Ex. 1 ¶ 12.) Plaintiff also testified at his deposition that Detective Cavada "rushed [him] from behind and just grabbed [him], manhandled [him] by the neck, smashed [his] head in the rail and handcuffed [him]." (Jaffe Decl., Ex. A at 41:9-19.)

The parties must promptly contact Magistrate Judge Aaron's chambers to schedule a settlement conference. This case remains referred to Judge Aaron for general pretrial management. This Memorandum Order resolves Docket Entry No. 50.

SO ORDERED.

Dated: New York, New York
December 5, 2019

                                                  /s/ Laura Taylor Swain
                                                 LAURA TAYLOR SWAIN
                                                 United States District Judge